UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CYNTHIA M. MAURO**     : | CIVIL ACTION NO. |
|     Plaintiff,                    : | |
|                                            : | |
| v.                                              : | |
|                                            : | TRIAL BY JURY DEMANDED |
|                                            : | |
| THE BARBERINO BROTHERS, INC. d/b/a  : | |
| BARBERINO NISSAN and NUTMEG     : | |
| STATE FINANCIAL CREDIT UNION,  : | MARCH 3, 2016 |
|     Defendants                 : | |

## COMPLAINT

### I. INTRODUCTION

1.   This is a suit brought by a consumer regarding the purchase and sale of a motor vehicle pursuant to a retail installment sales contract.  Plaintiff brings this action to recover actual damages, punitive damages, reasonable attorney's fees and costs from Defendant The Barberino Brothers, Inc. d/b/a Barberino Nissan ("Barberino").  The Plaintiff claims that Barberino has violated the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA").

### II. PARTIES

2.   Plaintiff is a consumer and natural person residing in South Meriden, Connecticut.

3.   Barberino is a Connecticut corporation that operates a Nissan dealership in Wallingford, Connecticut.

4. Nutmeg State Financial Credit Union is a credit union with its headquarters in Rocky Hill, Connecticut, and it is engaged in the business of engaging in indirect auto financing by accepting the assignment of retail installment sales contracts from car dealerships such as Barberino.

### III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e). Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This court has jurisdiction over the defendants because they are Connecticut entities that regularly conduct business in this state.

7. Venue in this court is proper, because the Plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

### IV. FACTUAL ALLEGATIONS

8. Prior to August 3, 2015, Barberino advertised a used 2011 Nissan Altima (the "Vehicle") on the Internet for a cash price of $15,475.

9. On or about August 3, 2015, Plaintiff visited Barberino, and she was interested in purchasing the Vehicle.

10. Plaintiff owned a 2000 Pontiac Sunfire that was not running and that had approximately 147,000 miles that she wanted to trade in.

11. Barberino had offered a "Cash for Junkers" promotion the prior month pursuant to which it offered to provide a $3,500 allowance for any trade-in regardless of condition.

12. In order to induce Plaintiff to purchase the Vehicle, Barberino told her that she could take advantage of the Cash for Junkers promotion.

13. This offer, which was communicated by a salesman, was made with the knowledge and consent of Barberino's managers.

14. The $3,500 promised allowance was substantially greater than the actual value of the Pontiac Sunfire, which was $500 or less.

15. Plaintiff informed Barberino that she could pay a down payment of up to $1,000 towards the purchase of the Vehicle.

16. Unbeknownst to Plaintiff, Barberino's "Cash for Junkers" promotion included a condition that consumers are not permitted to negotiate the price of the vehicle being purchased.

17. Also unbeknownst to Plaintiff, Barberino has a business practice of setting the asking price for motor vehicles by seeking advance approval from sales finance companies such as Nutmeg and then determining the maximum sales price that they can charge without exceeding the credit approval obtained.

18. In determining the maximum sales price that it can charge, Barberino adds to the maximum amount that a creditor will finance for the vehicle sales the amount of the cash payment that a consumer is willing to pay plus the amount being allowed for any trade-in.

19. Because Barberino adds the amount of the trade-in allowance and the cash down payment to its asking price, it effectively "swallows" the trade-in and the down payment so that the consumer does not receive any credit for making a down payment or furnishing a trade-in.

20. Nutmeg and other sales finance companies determine the maximum amount that can be financed by various factors, including the retail value of the vehicle as determined by sources such as the National Auto Dealer Association ("NADA") Official Used Car Guide.

21. Barberino also has a business practice of "power booking" motor vehicles by falsely informing sales finance companies that vehicles have features or options that they do not possess. Consequently, the finance companies will utilize a higher retail value in determining the maximum amount that can be financed for the purchase of a vehicle.

22. When Barberino power books a vehicle, a sales finance company will set a higher amount that can be financed for the purchase of the vehicle, enabling Barberino to charge consumers a higher cash price.

23. The NADA Retail value of the Vehicle was approximately $13,550.

24. On information and belief, Barberino followed these practices in submitting a credit application to Nutmeg and in setting a cash price of $22,175 for the Vehicle.

25. On or about August 5, 2015, Barberino prepared a retail installment sales contact that contained disclosures that purportedly included the information required to be provided under the Truth in Lending Act.

26. The retail installment contract contained an itemization that was inaccurate in that it did not disclose that Plaintiff was not receiving any credit for the trade-in or the cash down payment or both but which instead falsely and deceptively stating that Plaintiff was receiving a credit of $3,500 for the trade-in and $1,000 for the cash down payment.

27.     In order to entice Plaintiff into purchasing a GAP Addendum to the retail installment sales contract, Jason Napolitano, Barberino's finance director, told Plaintiff that if she got into a car accident on her way out of the dealership, the GAP Addendum provided that she would not be responsible for any balance owed on the retail installment contract in excess of the payment made by her primary insurance carrier.

28.     This was a false and deceptive statement, because although the GAP Addendum provided that the holder of the retail installment contract would accept insurance payment in settlement of the indebtedness, the Addendum placed a cap on the benefit that Plaintiff could receive by limiting the coverage to 150% of the "N.A.D.A. Official Used Car Guide's 'Retail' value for used vehicles."

29.     Consequently if the amount financed exceeded 150% of $13,550, which was the NADA retail value of the Vehicle, then Plaintiff would still be exposed to liability in the event that the Vehicle was totaled in an accident.

30.     The amount financed in the retail installment sales contract was $24,762, which was substantially greater than 150% of the NADA retail value, which was $20,325.

31.     Napolitano knew that the amount being financed in the contract was significantly greater than 150% of the NADA retail value, and his statement to Plaintiff that the GAP Addendum would cover the entire amount financed was false and deceptive.

32.     Barberino also provided Plaintiff with a Used Vehicle Disclosure Form that was severely misaligned so that the " x" that would otherwise indicate that the Vehicle

5

was a former rental vehicle if the alignment were proper was printed over a preprinted portion of the Contract, was inconspicuous, and was not easily noticed.

33. Plaintiff did not notice the misaligned notice, and she purchased the Vehicle unaware of its prior rental history.

34. Barberino has long been aware that its notices of rental history are misaligned, as it had, prior to the time of this transaction, been named as a defendant in multiple lawsuits in which consumers had complained about the misalignment of the disclosure, but it has continued to give deceptive disclosures that fail to inform consumers of the rental history of vehicles and which deceptively create the impression that vehicles are not former rental cars.

35. Rental vehicles have a lower value because of the "moral hazard" associated with continued use by individuals who are not invested in the long-term maintenance and value of the vehicles.

36. The Vehicle had a reduced value due to the prior rental history.

37. Plaintiff purchased a service contract as part of the transaction, and the $4,000 cost of the service contract was included as part of the amount financed under the retail installment sales contract.

38. Barberino assigned the retail installment sales contract to Nutmeg.

39. The retail installment sales contract contains provides that:

NOTICE:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

40. Just twelve days after she purchased the Vehicle, on August 17, 2015, Plaintiff was involved in an automobile accident with the Vehicle, and the Vehicle was declared a total loss.

41. Claimant contacted Nutmeg regarding the accident and the GAP Addendum, and Nutmeg informed Plaintiff that she was required to continue making payments under the retail installment contract while the insurance claim and GAP claim were being administered.

42. The GAP Addendum was administered by a third party that agreed to provide payment to Nutmeg in the event of a loss.

43. The third party administrator made payment to Nutmeg in the amount of $4,605.64.

44. By letter dated October 5, 2015, and received by Barberino on October 9, 2015, Plaintiff requested that Barberino cancel the Vehicle Service Contract.

45. Plaintiff's insurance carrier, CSAA General Insurance Company, determined that the Vehicle's actual cash value was $13,750, and after adding in amounts for tax reimbursements and DMV fees, it paid a gross settlement amount of $14,193.12 to Nutmeg on or about December 7, 2015.

46. Following the crediting of the account by the insurance payment, the crediting of the refund for the service contract, and the payment by the third party administrator of the GAP Addendum, Nutmeg claimed a balance due by Plaintiff in the amount of $1,629.62.

47. This claimed account balance was referred by Nutmeg to a law firm for collection purposes.

## V.     CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT (BARBERINO ONLY)

48.     Barberino violated TILA by not accurately itemizing the amount financed in that it added the allowance for Plaintiff's trade-in and the amount of the cash down payment to the cash price of the Vehicle without disclosing that the cash price had been increased on account of the trade-in and down payment.

49.     Plaintiff has suffered damages because she did not realize that the purchase price of the Vehicle was increased on account of the allowance for the trade-in and the cash down payment, and she reasonably believed that she was receiving credit for the trade-in and the down payment.

50.     Barberino is liable to Plaintiff for her actual damages plus a reasonable attorney's fee.

### .B.  CONNECTICUT UNFAIR TRADE PRACTICES ACT (BOTH DEFENDANTS)

51.     Barberino's failure to sell the Vehicle for the advertised price and its conduct in power booking the Vehicle and in increasing the cash price of the Vehicle by the amount of the trade-in allowance constituted violations of CUTPA.

52.     If Barberino had charged Plaintiff the advertised price of the Vehicle and credited that price with the $3,500 allowance offered for the Pontiac Sunfire, then the amount financed under the retail installment sales contract would have been reduced by the amount that she was overcharged for the Vehicle ($6,700) and sales tax on that amount ($425.45), or $7,125.45 less than the $24,762.19 in the contract, or $17,636.74.

8

53. The interest rate on the contract was 6.99%, and the finance charges on a contract balance of $17,636.74 from August 5, 2015 until December 7, 2015 would have been approximately $418.82.

54. Consequently, the payment from Plaintiff's primary insurer of $14,193.12 and the crediting of $4,000 for the service contract would have been more than sufficient to pay the $17,636.74 plus interest of $418.82, and Plaintiff would have received a surplus of approximately $137.56.

55. Additionally, because it would not have been necessary to make a claim on the GAP Addendum, Plaintiff could have cancelled that contract and obtained a further refund of $795, for a total of $932.56.

56. Consequently, Plaintiff has suffered actual damages due to Barberino's CUTPA violation in the amount of $932.56. She has also suffered additional damages and ascertainable losses due to the $1,629.62 debt claimed by Nutmeg and the harm to her credit reports.

57. Plaintiff also suffered additional ascertainable losses at the time of sale due to Barberino's failure to accurately disclose the rental history of the Vehicle and the amount that she had overpaid for the Vehicle.

58. Defendants are liable to Plaintiff for her damages, punitive damages, and attorney's fees.

59. Plaintiff is entitled to an order that she has no obligation to Nutmeg under the retail installment sales contract and requiring Nutmeg to delete any reports to consumer reporting agencies regarding the account.

**Wherefore, Plaintiff claims** actual damages, punitive damages, equitable relief and a reasonable attorney's fee.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        **PLAINTIFF, CYNTHIA M. MAURO**

By: /s/ *Daniel S. Blinn*
Daniel S. Blinn, ct02188
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com